## THE STATE v. THOMAS TOOHEY, Appellant.

**Division Two, May 14, 1907.**

1. **BURGLARY AND LARCENY: Sufficiency of Evidence.** Evidence in a prosecution for burglary and larceny *held* sufficient to justify the submission of the case to the jury.

2. ————: **Proof of Other Crimes: Common Design: Evidence.** In a prosecution for burglary of and larceny from a certain Pullman car, it was not error to admit evidence tending to show that another car coupled to the former had been burglarized and articles stolen therefrom, the property taken from both cars having been sold at the same time and place by defendant and his coindictee. The evidence tended to show a common design to burglarize both cars, and the two crimes were so closely related that proof of the one tended to establish the other. And, for the same reason, it was not error to permit the State to prove that defendant and his coindictee were seen together on the afternoon of the day on which the crime was committed, in the cab of a locomotive engine, defendant breaking off pieces of brass from the engine, and his coindictee picking them up.

3. ————: **Disposition of Stolen Property: Evidence.** No error was committed in permitting a witness for the State to testify that on the afternoon of the alleged burglary and larceny defendant and his coindictee came to witness's junk shop and sold to him some of the articles alleged to have been stolen. Although the stolen property may have been partly or even exclusively in the possession of defendant's coindictee at the time it was sold, yet defendant's presence was a circumstance tending to show his guilt.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

AFFIRMED.

*Philip D. Clear* for appellant.

(1) The demurrer to the evidence should have been sustained. State v. Huff, 164 Mo. 480. (2) The evidence admitted relative to car "Nubia," over defendant's timely objection, was error, because that car is

not mentioned in the information, and because said. evidence relates to a separate transaction. State v. Goetz, 34 Mo. 85; State v. Harold, 38 Mo. 496.; State v. Reavis, 71 Mo. 419; State v. Turner, 76 Mo. 350.; State v. Reed, 85 Mo. 194; State v. Tabor, 95 Mo. 590; State v. Spray, 174 Mo. 569; State v. Jackson, 95 Mo. 328; State v. Parker, 96 Mo. 328; State v. Crow, 107 Mo. 346; State v. Young, 119 Mo. 495; State v. Smith, 125 Mo. 6.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) (a) No error was committed in admitting evidence tending to show that the Nubia had been broken into and bronze hooks stolen from it. Said evidence tended to show a common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other. State v. Bailey, 190 Mo. 280; People v. Molineux, 168 N. Y. 264; Underhill on Crim. Evidence, sec. 88; 1 Wigmore on Evidence, sec. 306. (b) Neither was error committed in permitting the State to prove that the defendant and his co-indictee were found on the afternoon of the same day, between six and seven o'clock, in the cab of an engine, defendant breaking off pieces of brass and his codefendant gathering them up. This evidence was admissible for the reason given above, and for the additional reason that it tended to identify the defendant. State v. Walker, 194 Mo. 262; State v. Folwell, 14 Kan. 105; Yarborough v. State, 41 Ala. 405; Underhill on Crim. Evidence, sec. 91; 1 Wigmore on Evidence, sec. 414; 4 Elliott on Evidence, sec. 3058; Bishop's New Crim. Proc., 1129. (c) No error was committed in permitting State's witness Epstein to testify that defendant and James Carrigan came to his junk store together about four o'clock p. m. on the day of the alleged larceny, and that they

brought with them the stolen brass and stolen bronze, and sold the same to said witness. These articles were identified as the property stolen from the Bolton and the Nubia, and proof that the defendant and his associate had them in their possession so recently after the larceny thereof, was a strong circumstance tending to show that they had stolen the same. State v. Scott, 109 Mo. 228; State v. Castor, 93 Mo. 250; Wharton's Crim. Evid., sec. 758; 3 Greenl. on Evidence, sec. 32; 4 Elliott on Evidence, sec. 2725. Even if the stolen property was partly or exclusively in the possession of defendant's co-indictee, James Carrigan, at the time the same was sold at the junk store, still this recent possession was a circumstance against the defendant, in view of his association with Carrigan on said day, his presence with Carrigan at the junk store, his presence with and participation with Carrigan in the old engine and the denial of his name, when arrested. State v. Wohlman, 34 Mo. 482; State v. Dawson, 90 Mo. 149. (2) The evidence was sufficient to justify a submission of the case to the jury, and sufficient to justify the jury in finding the defendant guilty.

BURGESS, J.—On the 11th day of September, 1906, the prosecuting attorney of Jackson county filed an information, duly verified, charging the defendant and one James Carrigan with burglariously breaking into and entering a certain railroad car called the "Bolton," the property of the Pullman Company, a corporation, and taking and stealing therefrom certain brass hat and coat hooks and a brass guardrail and other articles of value then and there kept and deposited.

A severance being granted the defendant, he was tried on the 1st day of October, 1906, and convicted of burglary, and his punishment assessed at three years

in the penitentiary. After filing an unsuccessful motion for a new trial, defendant appealed.

The State's evidence tended to prove that on the 7th day of September, 1906, the Pullman Company was the owner of two sleeping cars, one called the "Bolton" and the other called the "Nubia," and that they were coupled together and standing on a side track in the Burlington yards, a little east of the roundhouse in Kansas City. On the morning of that day the doors of both cars were locked and the windows all down. At two o'clock in the afternoon of that day, it was discovered that one of the doors of the Bolton, as also one of the doors of the Nubia, had been broken open, and a number of brass hooks and brass guardrails and several other articles had been torn from their fastenings and removed from the interior of each of said cars, the brass hooks being worth about $1.50 each. Between six and seven o'clock of the same evening the defendant and his co-indictee, James Carrigan, were discovered by the night watchman in the cab of an old engine in the railroad yards, some distance away from where the cars Bolton and Nubia were standing. Defendant at the time was in the act of breaking off pieces of the brass attachments on the engine, using a hammer and chisel for that purpose, while Carrigan was picking up the pieces of brass that defendant had knocked off. The night watchman arrested the defendant, who on his way to the police station said that his name was Charley Smith, but he afterwards gave his true name. It appears from the evidence that about four o'clock on that afternoon, the defendant and Carrigan went together to a junk shop owned by Epstein & Son, about a quarter of a mile distant from where the two cars were standing, and sold some of the stolen brass hooks and the brass guardrail. The articles in question were identified by several officers and employees of the Pullman Company as the stolen property.

On behalf of the defendant, his aunt and his grandmother both testified that he was at home the afternoon of the day of the alleged burglary and larceny until four o'clock, when he left the house and did not return that evening.

Defendant contends that the demurrer to the evidence at the close of the State's case should have been sustained. It is true, the evidence was circumstantial, but it was sufficient to justify the submission of the case to the jury. The burglary was committed between two and four o'clock on the afternoon of the seventh of September, and the fact that the property taken from the cars was sold to a junk dealer about four o'clock of the same afternoon by the defendant and his accomplice tended strongly to establish the defendant's guilt. The property having been shown to have been in the possession of defendant and his companion shortly after the burglary and larceny was committed, raised the presumption that the defendant was guilty of the burglary and larceny. [State v. James, 194 Mo. 268.] Not only this, but it was further shown that the defendant and this same companion were seen, between six and seven o'clock the same afternoon, engaged in committing the same sort of larceny. True, the defendant offered evidence tending to prove an alibi; but the weight of the evidence was for the consideration of the jury. [State v. Smith, 190 Mo. 706.]

We are of the opinion that no error was committed in admitting evidence tending to show that the car called Nubia had been broken into and brass hooks and other articles of brass stolen therefrom. The two cars, Bolton and Nubia, were coupled together and were evidently burglarized about the same time, and the property taken from them was sold at the same time and place by the defendant and his co-indictee. The evidence tended to show a common design, scheme or

plan, to burglarize both cars for practically the same purpose, and the two acts of burglary and larceny were so closely related to each other that proof of the one tended to establish the other. [State v. Bailey, 190 Mo. 257; People v. Molineux, 168 N. Y. 264; Underhill on Criminal Evidence, sec. 88; 1 Wigmore on Evidence, sec. 306.] Nor was there error committed in permitting the State to prove that the defendant and his co-indictee were seen together between six and seven o'clock in the afternoon of the same day, in the cab of a locomotive engine, the defendant breaking off pieces of brass from the engine, and James Carrigan, his co-indictee, picking them up. [State v. Walker, 194 Mo. 253; State v. Folwell, 14 Kan. 105; Yarborough v. State, 41 Ala. 405; Underhill on Criminal Evidence, sec. 91; 1 Wigmore on Evidence, sec. 414; Elliott on Evidence, sec. 3058; Bishop's New Crim. Proc., 1129.]

No error was committed in permitting Abe Epstein, a witness for the State, to testify that the defendant and James Carrigan came to his junk shop together about four o'clock in the afternoon of the day of the alleged burglary and larceny and that they brought with them the brass articles alleged to have been stolen, and sold the same to him. These articles were identified as the property taken from the Bolton and Nubia, and the fact that defendant and Carrigan had them in their possession was an important fact as tending to show that they were the thieves. [State v. Scott, 109 Mo. 226; State v. Castor, 93 Mo. 242.] And when a burglary and larceny are committed at the same time, the law indulges the presumption that the person in whose possession the stolen property is recently thereafter found is guilty of the burglary as well as of the larceny. [State v. Warford, 106 Mo. 55.] Although the stolen property was partly or even exclusively in the possession of James Carrigan at the time it was purchased from him and the defendant by the junk

dealer, yet his presence and association with Carrigan at the junk store and at the time of the sale, his participation with Carrigan in the work of breaking off and stealing the brass attachments of the old engine, and his denial of his name when arrested, were all circumstances which tended to establish defendant's guilt. [State v. Wohlman, 34 Mo. 482.]

A final contention is that the court committed error in permitting the prosecuting attorney, in his closing address to the jury, over the objections of defendant, to go outside the record and make statements which were not warranted or authorized by the evidence, to the prejudice of the defendant; but after a careful reading of the remarks complained of, we are of opinion that there is nothing in them of which defendant has just cause to complain; certainly, nothing which would justify a reversal of the judgment.

Finding no reversible error in the record, the judgment is affirmed.

All concur.