THE STATE v. CLARENCE MOSS, Appellant.

Division Two, February 2, 1909.

1. **INDICTMENT: Burglary in Second Degree.** An indictment drawn under section 1886, Revised Statutes 1899, stating every material fact required by that section as necessary to constitute burglary in the second degree, need not allege the manner of the breaking, but is sufficient without attempting to define the kind or manner of breaking.

2. **EVIDENCE: What Another Said.** Testimony of one police officer as to what another said, if wholly immaterial, is no ground for a reversal.

3. **INSTRUCTION: None for Petit Larceny.** Larceny from a burglarized house is grand larceny, and where defendant was convicted of both burglary in the second degree and grand larceny he cannot complain that the court did not instruct on petit larceny.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams,* Judge.

AFFIRMED.

*Jas. M. Rollins* for appellant.

(1) The indictment is fatally defective: 1st, because it failed to allege the manner of the breaking. Conner v. State, 14 Mo. 561; State v. Henley, 30 Mo. 509; State v. Yandle, 166 Mo. 589. 2d, because it fails to allege that defendant intended to permanently deprive the owner of the use of his property without his consent. By the instructions the jury was required to find that the goods were taken without the consent of the owner, and that the defendant intended to permanently deprive the owner of the use thereof. State v. Campbell, 108 Mo. 613; State v. Yates, 159 Mo. 530; State v. Moore, 101 Mo. 326; State v. Littrell, 170 Mo. 13. "An indictment in the language of the statute is sufficient only where all the facts which constitute the offense are set forth in the statute." State

v. Krueger, 134 Mo. 262; State v. Morrison, 64 Mo. App. 507; State v. Smith, 66 Mo. App. 403; State v. Sayman, 61 Mo. App. 244; State v. Wilkerson, 170 Mo. 184. (2) The court erred in failing to pass upon the objection of defendant, made at the time, and permitting witness officer Edward Shenck to state that his fellow-officer told him that Moss had "dropped something." (3) The court failed to instruct the jury on the question of petit larceny. State v. Brown, 73 Mo. 631. The amount of property alleged to have been stolen, as set out in the information itself, was $20.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1) The information brings defendant within all the material words of the statute, and is sufficient. R. S. 1899, secs. 1886, 1891; State v. Watson, 141 Mo. 338. (2) The instructions given fully and fairly covered all the questions of law arising in the case which were necessary for the information of the jury in giving their verdict. (3) Defendant did not make objections or save exceptions to the action of the trial court in giving instructions, or bring them before the court on motion for new trial, and they are not subject to review. State v. Long, 209 Mo. 384. (4) Defendant's complaint, for the first time made in his motion for a new trial, that "the court did not fully declare the law in its instructions," does not entitle him to a review of the instructions given, and, as defendant did not ask the court to give any instructions, or call the court's attention to any specific matter upon which he desired instructions, he has no just cause to complain. State v. Espenschied, 212 Mo. 215; State v. McCarver, 194 Mo. 717; State v. King, 194 Mo. 481.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of the city of St. Louis, sentencing the defendant to the penitentiary for burglary in the

second degree for three years and for grand larceny for a term of two years. After ineffectual motions for a new trial and in arrest of judgment, the defendant has appealed to this court.

As the information is challenged, we reproduce the substance thereof, to-wit: "That Gilbert Bailey and Clarence Moss, on the twenty-first day of December, 1907, at the city of St. Louis, into a certain store, shop and building of Louis Haas there situate and being, feloniously and burglariously, forcibly did break and enter, with intent then and there, and thereby feloniously and burglariously to steal, take and carry away certain goods, wares, merchandise, other valuable things, and personal property in the said store, shop and building, then and there kept and deposited, and in said store, shop and building two 'cravenette' overcoats, two pairs of trousers, four pairs men's kid gloves, and one silk muffler, all of the value of twenty dollars, of the goods, wares, merchandise, other valuable things and personal property of the said Louis Haas in the said store, shop and building then and there being found, then and there feloniously and burglariously did steal, take and carry away, with the intent then and there to deprive the owner of the use thereof and to convert the same to his own use; against the peace and dignity of the State."

The defendants were duly arraigned on the 22d of January, 1908, and each pleaded not guilty. The case was then continued to the February term, and on the 4th of February, 1908, a severance was granted, and the defendant Gilbert Bailey withdrew his plea of not guilty and pleaded guilty of burglary in the second degree and sentence thereon was deferred. On the 5th of February, the defendant Moss was put upon his trial and found guilty as above stated.

The evidence on the part of the State tended to prove that Louis Haas on the 20th and 21st days of December, 1907, was engaged in business at number

1310 Olive street, where he had a small stock of gen-
tlemen's furnishing goods and clothing. Number 1310
Olive street was an ordinary store room, having a front
entrance and rear entrance by means of doors. In
the front there were show windows. About nine
o'clock on the evening of the 20th of December, 1907,
Haas closed his store, locking and securely fastening
the doors and windows. In the show windows at
that time, among other goods, were two cravenette,
overcoats, one black and the other gray, two pairs of
trousers, four pairs of gloves and a silk muffler, all
the property of said Haas. About fifteen minutes past
one o'clock that night, as officers Shenck and O'Brien,
who were on duty as plain-clothes policemen, were
passing north on the east side of Fourteenth street,
between Pine and Olive, they saw the defendant
Clarence Moss and Gilbert Bailey, both negroes, ap-
proaching them on the street. Shenck had known the
defendant Moss about ten years and O'Brien had
known him for a year or more. As Moss and Bailey
approached the officers, the latter noticed that Bailey
was carrying a bundle under his arm, and Moss, the
defendant, had something under his coat. When de-
fendant and Bailey were in a few feet of the officers
they broke and ran, refusing to halt at the command
of the officers. The officers pursued them down the
street, firing pistols first into the air and then at the
fugitives, and, as they did so, a bundle was seen to fall
from defendant Moss, which was found to be a pair
of trousers. Bailey was wounded, but he eluded the
officers for a time, but was finally arrested that night,
by still another officer. Moss, the defendant, was ar-
rested the next morning in the yard in the rear of
1423 Chestnut street where Moss lived, and near where
Bailey was arrested the officers found an overcoat and
a new pair of trousers. Next morning when Haas
opened his store he discovered that one of his show
windows was broken and the said trousers, overcoats,

gloves and muffler were missing therefrom. He identi-
fied the pair of trousers, which the officer had seen
the defendant Moss drop while fleeing from them on
the street, and also the overcoat and pair of trousers
which were found where Bailey was arrested, as a part
of his own property and as the same as had been in
his show window of his said store room when he closed
it on the night of December 20th. He testified that
the property missing from his show window was of
the reasonable market value between twenty-five and
thirty dollars.

Officer Matthews, who arrested the defendant,
testified that the defendant stated that he had been
all the night before upstairs near the place of his
arrest, with Ida Smith. When asked if he had been
with Gilbert Bailey the night before, he first said no,
and then said yes, that he had been with Gilbert Bailey
in a saloon at 1415 Chestnut until nine o'clock in
the evening, when he then went to Ida Smith's house
1334 upstairs, that he then came down into the saloon
with Bailey where he stayed until the saloon closed
at one o'clock; that he then left the saloon and went
east on Chestnut to 14th street where he left Bailey,
went across to Chestnut where he stayed the remainder
of the night with Ida Smith with whom he had been
living for several years.

The defendant testified in his own behalf that on
the night of December 20th he went to bed at the
rooms of Ida Smith, about nine o'clock; that about
eleven o'clock he got up and went to a lunch stand
where he remained about ten or fifteen minutes and
then went back to bed, where he remained the balance
of the night. On cross-examination he stated that he
had known officer Shenck about eight or nine years.

Ida Smith corroborated the defendant as to his
being at her house with her on the night in question.

Gilbert Bailey testified as witness for defendant
that the defendant was not with him on the night of

the burglary; that he had not seen the defendant after four o'clock of the day before, and that he did not know the name of the man that was with him at the time he was chased and shot by the officers on the night in question. On cross-examination he stated that he did not help burglarize Mr. Haas's store.

The court instructed the jury as to what constituted burglary in the second degree and as to grand larceny; and instructed the jury that they could find the defendant guilty of both offenses, or acquit him of one and find him guilty of the other, or acquit him of both. The court also instructed the jury on presumption arising from the recent possession of stolen property, also on *alibi,* presumption of innocence, and reasonable doubt, and the credibility of witnesses. No exceptions whatever were taken or saved to the instructions of the court and of course they are not for review on this appeal.

I.   The defendant assails the information as insufficient for the reason as he alleges that it does not allege the manner of the breaking. The indictment in this case was evidently framed to state the offense under section 1886, Revised Statutes 1899, and it states every material fact required by that section to constitute burglary in the second degree. Unlike section 1880, the statute does not attempt or define what kind of breaking shall be necessary to constitute the offense. It is purely a statutory offense and we think the indictment is entirely sufficient. A similar indictment in all respects was held sufficient by this court in State v. Watson, 141 Mo. 338, and we see no reason for departing from the conclusion we reached in that case.

II.   As to the objection to the evidence of the officer Shenck as to what O'Brien said, it is clear that it was wholly immaterial, and could not have had any effect upon the verdict of the jury. Certainly this cause should not be reversed on that ground, even if

the record is susceptible of the construction that the court refused to exclude it.

As to the proposition advanced that the court erred in failing to instruct on petit larceny, inasmuch as the defendant was convicted of both burglary and larceny, and larceny from a burglarized house was grand larceny under our statute, the defendant has no ground of complaint on that score. [State v. Peebles and York, 178 Mo. 475.]

There was ample evidence to sustain the verdict of the jury and we must therefore affirm the judgment, and it is accordingly so ordered. All of this division concur.