## THE STATE v. HARRY CONWAY, Appellant.

**Division Two, March 21, 1912.**

1. **WITNESS: Coindictee: Not Indorsed on Indictment.** A witness who was jointly charged by information with defendant, and whose name is not indorsed on the information, is competent to testify for the State in the separate trial of defendant, after a *nolle prosequi* has been entered as to such witness.

2. **BURGLARY AND LARCENY: Sufficient Evidence.** Where the evidence showed that both the burglary and larceny had been committed by some one, and a gold watch and two or three hundred dollars in money taken, and there is testimony that defendant was in possession of the watch shortly after the burglary was committed, the evidence is sufficient to take the case to the jury as to both the burglary and larceny.

3. ————: **Instruction: Not Preserved in Bill.** The action of the court in refusing instructions on the subject of alibi, set

out in the record proper but not made a part of the bill of exceptions, is not for review on appeal.

4. ———: Cross-Examination of Witness: Former Penitentiary Record of Defendant: Collateral Matter: Alibi. The defendant was charged with burglary and larceny of money and a watch, and interposed an alibi as a defense. The State had shown that a short time after the burglary defendant had gone to a saloon and exchanged ten dollars in silver for a ten-dollar bill. For the purpose of accounting for the fact that he had ten dollars in his possession, defendant called a witness who testified that defendant was usually employed and that he had been employed in another city for three or four years preceding the date of the offense. The prosecuting attorney, on cross-examination, asked the witness if he did not know that defendant was in the penitentiary during the time he had testified he was in said city. The defendant had not testified and had not introduced evidence of good character. *Held*, that it was error to permit the prosecuting attorney to cross-examine the witness as to defendant's former imprisonment.

5. ———: ———: ———: ———: ———: Cured by Direction to Disregard. On cross-examination the witness testified that he had heard persons say that defendant was in the penitentiary during the time witness had on direct examination testified he was in another city, and after defendant's motion to strike out this answer was overruled the court, of its own motion, said: "That part which he heard will be stricken out and will not be considered by the jury." *Held*, that the error in permitting the prosecuting attorney, on cross-examination, to ask the witness if defendant was not in the penitentiary during the time he had testified he was in another city, was not cured by the action of the court in striking out what the witness heard and directing the jury to disregard it. The court did not strike out the previous cross-examination relating to defendant's former imprisonment, and that was the prejudicial matter in the cross-examination. Besides even had the court stricken that out, it is doubtful whether thereby the unfavorable impression the jury had received of defendant's character and reputation would have been removed from their minds, so as to cure the error.

6. ———: Instruction: General Verdict: Separate Offenses. Burglary and larceny may be joined in the same information, but they are separate and distinct offenses, and upon a trial the jury may acquit of both, or convict of both, or convict of one and acquit of the other; and an instruction that requires them to convict of both or acquit of both, with no instruction or provision for separate verdicts, is error.

7. ———: ———: No Exception: No Request. Although no
exception was saved to an erroneous instruction given for the
State, or ₔto a failure to instruct on all the law of the case,
and no other objection was made except that in the motion for
a new trial it was assigned as error that the court "erred
in failing to instruct on the whole law governing the case,"
the defendant is entitled to a reversal of the judgment of
conviction of both larceny and burglary on the ground that the
court failed to instruct the jury on all questions of law "neces-
sary for their information in giving their verdict," as the
statute (Sec. 5231, R. S. 1909) specifically requires. The court
should have given instructions providing for a separate verdict
as to the distinct offenses, whether requested or not, and
whether or not an exception was saved to its failure to do so,
a failure to so instruct will work a reversal on appeal.

8. ———: ———: ———: Non-Direction. Non-direction, with
or without exceptions saved, is error in a felony case. There
is an inherent difference in this regard between civil and
criminal cases, some of which are enumerated in the opinion.
Besides, the statute specifically requires instructions to the jury,
"whether requestel or not, upon all questions of law arising"
in a criminal case "which are necessary for their information
in giving their verdict;" and into that statute cannot be read
the proviso that non-direction in a felony case is not error
which will warrant a new trial unless it affirmatively ap-
pear that the court's attention was called to the question
on which an instruction was desired and an exception saved
at the time to its failure to so instruct.

9. ———: ———: ———: ———: In Felony Cases: Statute.
The provision in said Sec. 5231, R. S. 1909, requiring correct
instructions to be given in a criminal case, "whether requested
or not," that "a failure to so instruct in cases of felony' shall
be good cause, when defendant is found guilty, for setting aside
the verdict of the jury and granting a new trial," distinguishes
misdemeanors from felonies in the matter of non-direction.
It has always been the rule that the failure to give necessary
instructions in a misdemeanor case when requested, if exception
is saved to such failure at the time, will work a reversal; and
these words in the statute are entirely meaningless unless they
mean that a failure to give necessary instructions in a felony
case, whether requested or not, or whether or not an exception
is saved to such failure, will work a reversal in a felony case.

10. ———: ———: ———: ———: Motion for New Trial:
General Assignment: Usually Insufficient: Exception. The
motion for a new trial should call the court's attention to
241 Sup.—18

the specific point of law on which it is claimed the court failed to instruct; otherwise, it will ordinarily be insufficient; but where an examination of the record reveals that the court failed to instruct on a matter of law that goes to the fundamental rights of the defendant, and that by such failure injustice may have been done, or a verdict returned which would not have been had such failure not occurred, the Supreme Court, in the interest of justice, will grant a new trial, though the point be presented in it for the first time.

Appeal from Greene Criminal Court.—*Hon. Alfred Page,* Judge.

REVERSED AND REMANDED.

*Talma S. Hefferman* for appellant.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1)   It is not necessary that the information describe any property kept in the house, or allege that the goods, wares, merchandise or other valuable thing kept therein was the subject of larceny. State v. McGuire, 193 Mo. 215; State v. Helms, 179 Mo. 280.   (2) Where the State calls a witness whose name is not endorsed on the information, defendant, when said witness is called, should move for a continuance on the ground of surprise; and if he fails to do that, he waives any right to complain by reason of surprise. State v. Whitsett, 232 Mo. 511; State v. Henderson, 212 Mo. 213; State v. Manning, 168 Mo. 418; State v. Barrington, 198 Mo. 23; State v. Myers, 198 Mo. 225; 1 Bishop's New Crim. Prac., sec. 869a; Ballard v. State, 19 Neb. 609; State v. O'Day, 89 Mo. 559.   (3)   Duncan was asked if he knew appellant had been in the penitentiary.   He answered he did not know, but he heard that he was, to which appellant objected and the court sustained the objection as to the part the witness heard.   The court stated that that part would be stricken out and would not be considered by the jury.

(4)  Instruction 1 concisely defines the offense in the language of the statute and the punishment as announced by the statute and properly defines the word "feloniously." R. S. 1909, sec. 4520.  (5)  Instruction 2 is properly based upon the evidence as to the condition of the door by which the entrance was made into the saloon, and also properly defines "larceny." State v. Henderson, 212 Mo. 208; State v. Howard, 203 Mo. 600.  (6)  Instruction 3 was a proper instruction upon the recent possession of saloon property.  The recent possession of saloon property, taken at the time of the commission of a burglary, is sufficient to justify the jury in finding that the persons in whose possession the same is found was guilty of the burglary as well as the larceny.  1 Greenleaf on Ev., sec. 134; Wigmore on Ev., sec. 153; 4 Elliott on Ev., secs. 2725, 2918; State v. Hammond, 203 Mo. 604; State v. Toohey, 203 Mo. 678; State v. James, 194 Mo. 277; State v. Moore, 117 Mo. 404.  (7)  In the record proper is incorporated two refused instructions both upon alibi.  These instructions are not for review in this court.  They are not incorporated in the bill of exceptions.  Clerk v. Hughes, 73 Mo. App. 633; Johnson v. Greenleaf, 73 Mo. 671; State v. Johnson, 81 Mo. 60; McLain v. Winchester, 17 Mo. 49; Cline v. Askins, 39 Mo. 39; Montgomery v. Hughes, 81 Mo. 63.  (8)  The verdict is certain, definite and responsive to the issues joined.  It finds appellant guilty of both burglary and larceny and assesses his punishment separately for each offense and no objection can be made as to the form of the verdict.

KENNISH, J.—Appellant, Harry Conway, Bert Drinkwater and Will Kennedy were jointly charged by information in the criminal court of Greene county, at the April term, 1910, with the crimes of burglary and larceny, alleged to have been committed April 13, 1910.  Appellant applied for and was granted a sever-

ance.  He was tried, convicted of both burglary and larceny, and his punishment assessed at imprisonment in the penitentiary for a term of seven years for the burglary and three years for the larceny.  He appealed to this court, but is not represented here by counsel, nor has he filed a brief.

The *corpus delicti* of each of the crimes charged was fully proven by undisputed testimony.  The building burglarized and in which the larceny was committed was a saloon in the city of Springfield.  It was shown by the testimony that on the night of April 12, 1910, a sum of between two hundred and three hundred dollars and a gold watch were deposited in the safe, and that the saloon was closed and the doors locked at midnight.  At five o'clock the next morning it was learned that the saloon had been burglarized, the safe dynamited and the money and watch stolen.  A few days after the burglary, Kennedy, coindictee of appellant, pawned a gold watch in said city, which was identified as the watch stolen from the saloon.  During appellant's trial the prosecuting attorney nol-prossed the case against Kennedy, and thereupon he testified for the State that appellant gave him the watch and that he pawned it at his request and under his directions.  Witness Duke, with whom the watch was pawned, testified that appellant came to him and asked him for more money on a watch, after the watch in question had been pawned, but he further testified that appellant pawned a silver watch with him, on which he then owed appellant a dollar and a half, and that nothing was said by appellant inconsistent with the theory that he had in mind the silver watch and was asking for the balance due on it.  There was testimony that appellant, shortly after the burglary, went to a saloon and exchanged ten dollars in silver for a ten-dollar bill, but the witness who testified to that fact said that appellant generally had money and that there was nothing unusual in seeing him with ten or

fifteen dollars in his pocket. That was the only evidence of appellant's possession of the money charged to have been stolen.

Appellant interposed a defense of alibi, and in support thereof it was shown that he was under arrest the night of the burglary, for the violation of a city ordinance, and was not released by the police until about two-thirty or three o'clock in the morning; that the police interviewed appellant's mother, who agreed to pay his fine, and that he was then released. Appellant's mother and sister testified that appellant came home immediately after his release; that after talking awhile he went to bed in a room adjoining theirs, having removed his shoes and hat in their room, as was his habit, and that he did not leave his room the remainder of the night.

The appellant, evidently for the purpose of accounting for the fact that he had ten dollars in his possession a few days after the burglary was committed, called a witness named Duncan, who testified that appellant was usually employed; that he had been employed in Kansas City for three or four years preceding the date of the offense. The prosecuting attorney, on cross-examination, asked the witness if he did not know that appellant was in the penitentiary during the time the witness had stated he was in Kansas City. The question was objected to and the objection was overruled, the court stating, "It is competent for the purpose of determining whether this witness knows he was in Kansas City." The witness answered that he did not know how many times he had been in the penitentiary. When further asked if he knew he was in the penitentiary during the time about which he had testified, the witness said: "I don't know whether he was ever in the penitentiary; I hear them say he was." Appellant moved that the answer be stricken out and the motion was overruled. After the motion was overruled and the ruling excepted to, the

court, of its own motion, said: "That part which he heard will be stricken out and will not be considered by the jury."

I.  In the motion for a new trial complaint is made of the action of the court in overruling defendant's motion to quash the information.  The motion to quash assailed the information as being vague and indefinite and as failing to charge the defendant with the commission of any offense.  We have carefully examined the information, and it is in conformity with approved precedents.  [State v. Watson, 141 Mo. 338; State v. Moss, 216 Mo. 436.]

II.  Another complaint in the motion for a new trial was that the witness Kennedy should not have been permitted to testify as a witness for the State because his name was not indorsed on the information. It has been repeatedly held by this court that it is not error to permit a witness, whose name is not indorsed on the indictment or information, to testify for the State.  [Sec. 5097, R. S. 1909; State v. Steifel, 106 Mo. l. c. 133; State v. Henderson, 186 Mo. l. c. 482; State v. Myers, 198 Mo. l. c. 247.]

III.  Objection was also made that Kennedy was not a competent witness against the defendant because he and defendant were jointly charged in the information with the offenses for which defendant was on trial.  The defendant was being tried separately.  During the trial a *nolle prosequi* was entered as to Kennedy.  When the case was nol-prossed as to him he became a competent witness.  [Sec. 5241, R. S. 1909; State v. Beaucleigh, 92 Mo. 490; State v. Walker, 98 Mo. 95; State v. Steifel, 106 Mo. 129.]

IV.  Defendant's instruction in the nature of a demurrer to the evidence was properly overruled.  The evidence clearly showed that both the burglary and

larceny had been committed by some person. There was testimony that defendant was in possession of a part of the stolen property shortly after the burglary was committed. Such evidence was sufficient to take the case to the jury as to both the burglary and the larceny. [State v. Owens, 79 Mo. 619; State v. James, 194 Mo. 268; State v. Toohey, 203 Mo. 674.]

V. The refusal of the court to give two instructions on the subject of alibi, requested by the defendant, is also assigned as error in the motion for a new trial. The two instructions are set out in the record proper, but are not made a part of the bill of exceptions, and therefore the action of the court in refusing them is not before us for review. [State v. Glasscock, 232 Mo. 291; State v. Little, 228 Mo. 273; State v. Earll, 225 Mo. 537; State v. Finley, 193 Mo. 202.]

VI. The objections interposed to the cross-examination of the witness Duncan, concerning appellant's former imprisonment in the penitentiary, should have been sustained. Appellant had not testified as a witness and had not introduced evidence of good character. As he had not injected such an issue into the case, it was not competent for the State to thus assail his character and reputation. When competent evidence is offered tending to show the commission of the offense charged, it is no objection thereto that such evidence also shows the accused to be guilty of another crime. But the question presented here is this: Is it proper to permit the State, on cross-examination of a witness for the defendant, when the character or reputation of the defendant is not in issue, to test the credibility of the witness as to a collateral matter about which he has testified, by asking him whether he does not know that the defendant was in the penitentiary on a given date? The question thus presented, so far as we have been able to find, has not been passed upon

by this court, but authority on the question is not lacking.

In Bishop's New Crim. Proc. vol. 1, sec. 1122, the author says: "Cross-examinations of witnesses, and evidence to discredit them, whereby irrelevant matters is sometimes not improperly brought out, will not be permitted a scope disclosing what tends to prove an irrelevant other crime; for this, under the pretense of justice, would be a wanton prejudice to the defendant."

In the case of State v. Eder, 36 Wash. 482, the court had before it a question similar to the one now under consideration. In that case the wife of a defendant on trial, testifying as a witness in his behalf, stated in her direct examination that she and the defendant were married in the year 1898. On cross-examination, for the purpose of discrediting her testimony, she was asked if the defendant was not in the penitentiary in the year 1898. The court held that such cross-examination was improper and prejudicial to the defendant, and on that ground alone reversed and remanded the cause. In the opinion in that case the court said: "While it is sometimes stated that any circumstance which tends, in the remotest degree, to affect the credibility of a witness can be shown on cross-examination of such witness, yet the rule is not without exception. The fact shown must have a tendency to accomplish the purpose intended, and must not be something which of itself tends directly to prejudice the defendant in the minds of the jury. A defendant can be prejudiced, of course, by showing that his witness is unworthy of belief, but the State cannot, under the guise of impeaching a witness show facts which tend directly to prejudice the defendant, but which only remotely, if at all, discredit the witness."

The same limitation is placed upon the right of the State in the cross-examination of witnesses for the

defendant in the cases of Hoberg v. State, 3 Minn. 262, and Hamilton v. State, 34 Oh. St. 82.

In our opinion the doctrine announced in the foregoing authorities is sound, and we hold that it was error to permit the prosecuting attorney to cross-examine the witness as to appellant's former imprisonment.

Nor do we think the error was cured by the action of the court in striking out "what the witness heard" and telling the jury to disregard that part of the testimony. The defendant made timely objections to the questions. He also moved that the testimony be stricken out. Had the court sustained the motion and struck out all of the cross-examination relating to the former imprisonment, and told the jury that none of it should be considered in arriving at their verdict, it would still be doubtful whether that would have removed from the minds of the jury the unfavorable impressions they had received of the defendant's character and reputation, so as to cure the error. But when the court permitted the cross-examination over the defendant's objections, and overruled the motion to strike the testimony out, the subsequent ruling by the court that what the witness had heard would be stricken out and should not be considered by the jury, cannot be said to have cured the error. The language of the court necessarily implied, and the jury naturally understood, that a part of the testimony as to the former imprisonment of the defendant in the penitentiary remained in the case for their consideration.

VII. The court, upon the request of the State, gave the following instruction:

"If you find and believe from the evidence in the case that the defendant, either alone or together with another or others, at any time within three years next before the 11th of May, 1910, at the county of Greene and State of Missouri, did feloniously and burglariously break into and enter a building located at num-

ber 238 on West Commercial street in the city of Springfield, Greene county, Missouri, which said building was then occupied as a saloon building by J. P. King, and in which said building there was at the time divers goods, wares, merchandise and valuable things kept and deposited, with intent then and there feloniously and burglariously to steal, take and carry away any of said goods, wares, merchandise and valuable things in said building then and there being, and two hundred and ten dollars, in money, of the value of two hundred and ten dollars, and one gold watch and chain, of the value of thirty-five dollars, or any portion of said money or property of any value whatever, in said building then and there being, and the property of J. P. King, feloniously and burglariously did steal, take and carry away, then you will find the defendant guilty of both burglary and larceny, and for the burglary you will assess his punishment at imprisonment in the State penitentiary for as long a term as you may deem proper, not less than two years; and for the larceny you will assess his punishment, in addition to the punishment fixed for the burglary, at imprisonment in the State penitentiary for a term of not less than two nor more than five years.

" 'Feloniously' means unlawfully, against the solemn admonitions of the law."

Other instructions were given which correctly instructed the jury as to the presumption of guilt of the burglary and larceny arising from the possession of property recently stolen, in connection with the other facts and circumstances in evidence. No instruction was given directing the jury that they might convict of the burglary and acquit of the larceny, or convict of the larceny and acquit of the burglary, accordingly as they should find and believe from the evidence, and the jury was left with an instruction that authorized only a conviction of both offenses or an acquittal of both. There are blank forms of verdicts found in the

record, without any explanation, from which it would appear that the court had in mind the right of the defendant to have his cause submitted on the theory that the jury might convict of one of the felonies charged and acquit of the other, but these forms were not supported by any instruction, and the question arises, was the failure to give such an instruction prejudicial error?

No exception was saved at the time to the failure of the court to give such an instruction, or to the failure to instruct on all the law of the case, but one ground of the motion for a new trial was "because the court erred in failing to instruct the jury on the whole law governing the case."

The record thus fairly presents the question: Is the appellant entitled to a reversal of the judgment and to a new trial on the ground that the court failed to instruct the jury on all questions of law "necessary for their information in giving their verdict?" It is the settled law of this State that although burglary and larceny may be joined in one indictment, as authorized by statutes, they are nevertheless separate and distinct felonies, and upon a trial the jury may convict or acquit of both or of either. "That the jury could find the defendant guilty of burglary and fail to find him guilty of larceny, there can be no doubt, even though the testimony abundantly established the larceny as well as the burglary." [State v. Howard, 203 Mo. l. c. 604; State v. Kelsoe, 11 Mo. App. 91; Id., 76 Mo. 505; State v. Nicholas, 222 Mo. 425; State v. Lackey, 230 Mo. 707.] According to the foregoing authorities it was necessary for the information of the jury that they should have been instructed as to their authority under the law to convict of one felony and acquit of the other.

The further question arises as to whether the failure of the court to instruct the jury upon such

question of law has been preserved for review in this court.

It is provided by section 5244, Revised Statutes 1909, that, "the court may instruct the jury in writing on any point of law arising in the cause," and by the next succeeding section that, "on the trial of any indictment or prosecution for a criminal offense, exceptions to any decisions of the court may be made in the same cases and manner provided by law in all civil cases. . . . " These sections have long been a part of the criminal procedure of this State, and even before the enactment of the present statute upon the subject of instructing the jury in criminal cases, this court held that it was the duty of the trial court to instruct the jury on the essential elements of the crime charged, and that a failure so to do, whether requested or excepted to or not, was reversible error. [State v. Kilgore, 70 Mo. 546; State v. Branstetter, 65 Mo. 149; State v. Stonum, 62 Mo. 596; State v. Jones, 61 Mo. 232; State v. Matthews, 20 Mo. 55.] In so holding this court necessarily distinguished between civil and criminal cases, for in the former non-direction is not error. We think the distinction thus made is founded on sound reason. There is an inherent difference, so far as the necessity to instruct is concerned, between the two classes of cases. We shall not attempt to enumerate such differences, but we call attention to the following: In a civil case the jury have all the issues and the relief prayed for set forth in the pleadings, and therefore have information to enable them to act intelligently in returning a verdict, without instructions from the court. In a criminal case, although the jury is required by law to fix the punishment, even in capital cases, there is no guide or information available to them for that purpose and in the absence of instructions they would be left to grope in the dark. This fact is referred to in the case of State v. Nicholas, 222 Mo. 425. In civil cases the interests of the oppos-

ing parties are always antagonistic, while in a criminal case the State does not maintain the same relation to the litigation or to the defendant as a plaintiff in a civil case. The State is concerned alone in the enforcement of the law and in inflicting punishment only in case of guilt. There is no such procedure as judgment by default in a criminal case. The accused must appear in person, and as frequently occurs he is without counsel, or his counsel is not of his own choosing and is compelled to serve without remuneration. These and other considerations which might be mentioned doubtless caused the enactment of the law imposing upon a court learned in the law and paid for his services, a duty which in the interest of public justice could not be shifted upon a defendant, ignorant of his rights, or upon inexperienced and unpaid counsel. Therefore in 1879 the Legislature of this State enacted a law making it the mandatory duty of the court to instruct the jury in criminal cases, while no corresponding law has ever been enacted as to civil cases.

By that statute (Sec. 5231, R. S. 1909), it is provided that: ''Whether requested or not the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt; and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial.''

Notwithstanding the apparently mandatory character of the language of the statute it is maintained, and in a number of cases it has been held, that nondirection of the jury upon the law in a criminal case is not error which will warrant a new trial unless it affirmatively appears that the court's attention was called to the question on which an instruction was desired and an exception saved at the time to the court's

action. That view of the law means that while the Legislature has expressly said that a failure of the court to do a certain act shall be good cause for setting aside the verdict and granting a new trial, a proviso should be implied to the effect that such failure shall not so entitle the defendant unless he requested an instruction and excepted to the court's action in failing to give it. · This contention is made notwithstanding the fact that the law provides that a request shall not be necessary, and notwithstanding the well-recognized principle of law that criminal stautes are uniformly construed strictly in favor of the accused.

The construction of the statute as to the necessity of a request for the instruction desired and an exception at the time to the court's failure to give it, was first announced, and without referring to the statute, in the case of State v. Bond, 191 Mo. 555. That case was followed by this court in a number of later cases. But this court has always held, even while following the doctrine of the Bond case, that if an erroneous instruction was requested by a defendant, then it became the duty of the court to give a correct instruction upon that question, and no exception for failure to do so was necessary in order to preserve the court's action as a ground for new trial and for review on appeal. [State v. Matthews, 20 Mo. 55; State v. Jones, 61 Mo. 232; State v. Stonum, 62 Mo. 596; State v. Lowe, 93 Mo. 547; State v. Davis, 141 Mo. 522; State v. Adler, 146 Mo. 18; State v. Brinkley, 146 Mo. 37; State v. Clark, 147 Mo. 20; State v. Reed, 154 Mo. 122; State v. Fannon, 158 Mo. 149; State v. Moore, 160 Mo. 443; State v. Barton, 214 Mo. 316.] That rule is clearly a departure from the law of exceptions in civil cases, and to that extent gives effect to the statute making it the duty of the court to instruct in criminal cases.

In the case of State v. Nicholas, 222 Mo. 425, the court did not follow the Bond case. Answering the

contention of the State that the defendant had not requested an instruction and therefore could not be heard to complain, this court (1. c. 434) said: "But aside from all this it was plainly the duty of the court, by its instructions, to require the jury to find all of the essential elements of an offense embraced within the charge, and designate to them the nature and character of the punishment they were authorized to assess."

The doctrine of the Nicholas case was reaffirmed in the case of State v. Lackey, 230 Mo. 707, in an opinion by the writer, concurred in by GANTT and BURGESS, JJ.; also in the cases of State v. Hoag, 232 Mo. 308, in an opinion by BROWN, J., and State v. Harris, 232 Mo. 317, in an opinion by FERRISS, J., in both of which the full court concurred. The same construction is also supported by the following cases: State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. 568; State v. Henson, 106 Mo. 66; State v. Hutchinson, 111 Mo. 357; State v. Maguire, 113 Mo. 670; State v. Nelson, 118 Mo. 124; State v. Taylor, 118 Mo. 153; State v. Rufus, 149 Mo. 406.

In view of these decisions it would seem that the law, at least as to whether a request and exception are necessary to save the point as ground for a new trial, should be considered as settled, but because of some new points of attack upon these recent decisions, a few additional observations will be added.

No State, except the States of Kansas and Texas, has a statute even substantially similar to that under review, and therefore general law can aid but little in its construction. Our statute was taken almost verbatim from the laws of Kansas. Since its enactment in 1879 it has been made more mandatory in its evident purpose to guard the rights of the accused, by amendment from time to time, while the Kansas law has remained unchanged. When our statute was adopted the Supreme Court of Kansas had construed their law in

the case of Craft v. State, 3 Kan. 450, saying (1. c. 470):
"No request of the prosecuting attorney that he only
wants instruction as to the first degree given to the
jury, nor the omission of the defendant to request the
court to thus instruct, can change the duty of the
court in this particular. It is a duty which the statute
makes obligatory, and a right which the defendant has,
to have the court instruct the jury upon the statutory
law in reference to the various degrees of murder."

It is established law that when a statute of another
State is adopted by the Legislature, the construction
placed on the statute prior to its adoption governs.

In the recent case of State v. Winters, 81 Kan. 414,
the same court concluded an extensive review of its
former decisions upon the subject as follows:

"These cases are sufficient to illustrate the limi-
tations upon the compulsory aspect of the statute
which have been recognized since Craft's case was
decided, in April, 1866. From all the decisions noted
it may be concluded that the statute means what it
says and should be followed, but that a duty rests on
counsel for the defendant to aid and not to ambush
the court, and consequently instructions should be
requested covering all lesser degrees or lesser crimes
involved in the main charge which the defendant de-
sires to be considered. A request sufficient to di-
rect the mind of the court to the subject is enough.
Good instructions need not be offered, or a good theory
for them formulated; and the evidence itself may point
so plainly to the necessity for such instructions that
no request is necessary. Generally, however, a failure
to make the request waives error in failing to instruct,
and, generally, error in failing to instruct or in giving
wrong instructions upon lesser degrees or offenses
works no prejudice when the defendant is convicted
upon satisfying evidence of a higher charge, under
correct instructions relating to it. Should it appear
that if omitted instructions duly requested or clearly

required by the evidence had been given the jury might naturally and probably have convicted of a lesser degree or offense, the omission will constitute prejudicial error."

It should be noted that section 5245, Revised Statutes 1909, providing that all exceptions in criminal cases shall be goverened by the law applicable in civil cases, is identical with sections 6798 of the General Statutes of Kansas of 1909.

The law of Texas is also in substantial agreement with our law upon the subject of the duty of the court to instruct the jury, except that in a subsequent section (Art. 743, T. 8, Tex. R. C. S. 1911) it is provided that, "whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall not be reversed; unless the error . . . shall be excepted to at the time of the trial." The article making it the duty of the court to instruct the jury is one of the eight referred to. And article 744, T. 8, provides that exceptions in criminal cases shall be governed by the provisions of the law of exceptions in civil cases.

It is unnecessary to do more than refer to the fact that the Texas law, although containing a provision similar to that found in our law, making the civil code as to exceptions applicable to criminal cases, yet added an express requirement in criminal cases that error must be excepted to at the time to be available on appeal, a requirement not found in our law. But even with that requirement the failure of the court to instruct will in certain cases be considered when raised for the first time in the motion for new trial, or even in the appellate court. [See cases cited, Texas Code of Crim. Proc., 1900, p. 242, note 1.]

One provision of our statute to which attention has not been directed in the many cases involving its con-

struction, should be considered. Prior to 1889 no distinction was made between misdemeanor and felony cases, as to the duty of the court to instruct the jury. That year the following words were added to the statute by amendment, "and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial." The language of this amendment amounts to a legislative declaration as to the purpose and intent of this law. It not only states what shall result from the failure to instruct, but that such result shall follow only in felony cases, thereby taking misdemeanor cases out of the rule by necessary implication. It has always been the law in this State and is now that in misdemeanor cases it is the duty of the court to give instructions to the jury, when necessary instructions are requested, and the failure to do so, excepted to at the time, will warrant a new trial, so that if a request and exception are necessary in a felony case, as in a misdemeanor case, the distinction made by the amendment of 1889 becomes meaningless and of no effect. We have given cereful consideration to this amendment, and upon no possible theory can we harmonize it with the view that a request for an instruction necessary for the information of the jury and an exception for failure to give it, are necessary to save the point for review in a felony case.

We are aware that a number of cases can be cited that are in conflict with the views herein expressed, and also others in support of such views. Space forbids that we should attempt a full review of such cases. It is sufficient to say that the language of the statute, the facts in connection with the history of the amendments thereto, the construction placed upon the law by the courts of the State from which it was taken, and the imperative necessity, in the interest of justice, that the jury in a criminal case should be instructed as to the law, fully satisfy us as to the correctness of the

cases holding that the failure of the court to give nec-
essary instructions in felony cases shall be good cause
for a new trial, without request or exception by the
defendant at the time.

The question remains, was the point properly
made a ground of the motion for a new trial? The thir-
teenth ground of the motion was: "Because the court
erred in failing to instruct the jury upon the whole
law governing the case." In the consideration of this
question we must not overlook the language of the
statute which bases the right to a new trial upon a fail-
ure to instruct the jury on all questions of law arising
in the case "which are necessary for their informa-
tion in giving their verdict." That language, fairly
construed, does not mean that the court shall instruct
upon any and every question, but only upon such as are
necessary and essential to intelligent action by the
jury in the trial of the case before them.

Ordinarily technical detail is not required in stat-
ing the grounds of the motion for a new trial. But
the purpose of the motion generally, not always, is to
bring before the court for review rulings made during
the trial and to which specific objections were made
at the time. However, in the case of alleged error for
failure to give necessary instructions, the complaint
is because of the non-action of the court, and when
such failure is made a ground of the motion for a new
trial, we think it is not an unreasonable construction
of the statute to hold that the defendant should call
the court's attention to the question of law on which
it is claimed the court failed to instruct. The court
is then given an opportunity to grant a new trial, if the
complaint is well founded, without the delay or expense
incident to an appeal. This rule does not work a hard-
ship on the defendant, for it gives him the full time
allowed for filing the motion to formulate his com-
plaint. It is not only fair to the trial court, but in case
of an adverse ruling on the motion, the record on ap-

peal will show on its face the error complained of, when otherwise it would not.

Notwithstanding the foregoing rule, if satisfied from the record that there has been a failure to instruct the jury upon a.question which goes to the fundamental rights of the defendant, and that by such failure injustice may have been done or a verdict returned different than if such failure had not occurred, this court, in the interest of justice, will not hestitate to grant a new trial, though the question should be presented here for the first time.

This case is one which we think falls under the exception to the rule. Although the statute authorized the joining of both felonies in one count of the information and the trial of the defendant for both at the same time, he still had the right to have the jury pass separately upon his guilt or innocence of each offense. This right, of vital importance under the law, was denied to him by the instructions, and for that reason, as well as for the error discussed under point 6, we hold that the judgment should be reversed and the cause remanded. It is so ordered. *Ferriss, P. J.,* and *Brown, J.,* concur.